AO 91 (Rev. 11/11) Criminal Complaint

United States Courts
Southern District of Texas
FILED
April 11, 2022
Nathan Ochsner, Clerk of Court

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States of America
v.
Jonathan Rolando Ortiz-DeElon
&
Carlos Aron Oyervides

Defendant(s)

Case No. 4:22-mj-822

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __04/08/2022__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 8 U.S.C. § 1324 (a)(1)(A)(v)(I) | Conspiracy to Transport Aliens into or Within the United States |

This criminal complaint is based on these facts:

Please see attached Affidavit by Special Agent Jason C. Gadberry in support of this Criminal Complaint.

☑ Continued on the attached sheet.

_Complainant's signature_
Jason C. Gadberry, Special Agent
_Printed name and title_

Sworn to before me telephonically.

Date: __04/11/2022__

City and state: __Houston, TX__

_Judge's signature_
Yvonne Ho, U.S Magistrate Judge
_Printed name and title_

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS: | : : : : : | AFFIDAVIT   **4:22-mj-822** |
| COUNTY OF HARRIS | | |

I, Special Agent Jason C. Gadberry, being duly sworn, depose and state the following:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with Homeland Security Investigations (HSI). I have been so employed since 2004. Prior to that, I was an Immigration Enforcement Agent with the Immigration and Naturalization Service (INS) from 1998 to 2004. I received my Texas Peace Officer License in 1996. I have training and experience in human smuggling, human trafficking, narcotics smuggling, and immigration fraud investigations.

2. This Affidavit is submitted in support of a criminal complaint charging Jonathan Rolando **ORTIZ**-DeElon and Carlos Aron **OYERVIDES** with committing violations of the Title 8 U.S.C. § 1324 (a)(1)(A)(v)(I), Conspiracy to Transport Aliens into or Within the United States, in the Southern District of Texas.

3. I base the information in this affidavit on my personal knowledge and on information that I have learned, either directly or indirectly, from witnesses, records, and other law enforcement officers and agents. Additionally, unless otherwise indicated, conversations discussed herein are described in substance and part rather than verbatim. Likewise, I have not included each and every fact that my investigation has revealed, but rather, have included only those facts necessary to show probable cause. More information and details may arise as the investigation continues.

**PROBABLE CAUSE**

On Thursday, April 7, 2022, Homeland Security Investigations (HSI) Houston received information regarding a four-year-old child (Liam Zabdiel ROBLERO-Mejia, DOB 09/06/2017) who was smuggled into the United States and was allegedly being held for $6,500.00 (US Dollars) in smuggling fees. Suspects had contacted the child's father (Sadbi Minyamin ROBLERO-Bravo, DOB 05/29/1995), who resides in Tennessee, and demanded payment. The father contacted authorities, and the case was handled jointly by HSI Houston, Houston Police, Harris County Sheriffs, and Texas Department of Public Safety.

4. On April 7, 2022, HSI Houston undercover special agents (UCs) posing as the child's uncle contacted the alien smuggler at the phone number provided by Sadbi ROBLERO-Bravo to negotiate the release of ROBLERO-Mejia. During the conversation with the UC, the suspect demanded $6,500.00 US Dollars for the release of the child. The suspect implied in the Spanish language that if the money was not paid, the child would be harmed. The English translation was roughly that if the family did not pay, "they would get the child back, but it would not be in a way they would want the child back". HSI UC agents took the conversation to be a threat to the child's physical safety.

5. An attempt was made by UCs to arrange a face-to-face meeting to "buy out" ROBLERO-Mejia. This would be a negotiated meeting in a public place, where HSI UCs would exchange the money to recover ROBLERO-Mejia. Once the child was in the custody of HSI and safely away from the suspects, police would move in and arrest the suspects. The suspects agreed to meet the following morning, on Friday, April 8, 2022.

6. On April 8, 2022, an operational briefing was conducted to plan the rescue of ROBLERO-Mejia. Present at the briefing were HSI agents, Houston Police Task Force Officers,

Houston Police SWAT, and Harris County Sheriff's Task Force Officers. UC agents would contact the supsects and ask to meet in the parking lot of IKEA, located at 7810 Katy Freeway in Houston, Texas. A Texas Department of Public Safety (DPS) helicopter would monitor the operation from the air.

7. The suspects were still willing to meet, but they wanted the HSI UCs to bring the money, which they would take, and the child would be brought after the suspects had left. UC agents felt this was not a safe plan and pushed to have the child brought at the beginning of the meeting. A location was never agreed upon, and the suspects did not want to deviate from their plan of taking the money first. It was decided that for the safety of the ROBLERO-Mejia, HSI would begin attempting to track the suspect's cellular device to locate the child. At one point the suspects sent a proof-of-life picture of ROBLERO-Mejia that showed him wearing a red long sleeved hoodie shirt.

8. HSI Houston agents utilized a pen-register/ trap-and-trace order signed by the Honorable J. Scott Hacker, Magistrate Judge on April 8, 2022 as well as other law-enforcement techniques to attempt to locate the suspects through their cellular phone that had had been used to communicate with the UC's. On April 8, the cellular signal was eventually located at El Franco Lee Health Center, 8901 Boone Road, Houston, in the Southern District of Texas. Agents observed a suspect using a cellular phone, driving a blue Nissan SUV bearing paper tags. HSI agents and Houston Police Task Force Officers began a rolling surveillance of the suspect. This led to the suspected smugglers making multiple stops, including an apartment complex located at 550 Stafford Run Road, in Stafford, Texas. There, surveillance units and air assets observed the same suspected smuggler from Franco Lee Health Center interacting with several adults and young children in the parking lot. One of those children closely resembled the physical

description of ROBLERO-Mejia including the same red shirt as in the proof-of-life photo. Agents conducting surveillance observed the suspects entering and exiting Apt. 1105 at the apartment complex.

9.    HSI UC agents contacted the suspect, who still refused to commit to a time or location to exchange ROBLERO-Mejia for $6500.00 USD. The suspects stated they were concerned that law enforcement may intervene, and that they were bring several people with them to whatever meeting was arraigned, to make sure we would "not try anything".

10.   The original threat to the safety of ROBLERO-Mejia, combined with the threat to bring multiple suspects, and a refusal to commit to a meeting, caused HSI agents to become worried the meeting may not take place. It was decided the safest course of action was to take the suspects into custody and attempt to locate ROBELLO-Mejia at the suspect apartment located at 550 Safford Run Road, #1105. At that time, the suspects including the individual spotted at the Franco Lee Health Center who were still under police surveillance, had traveled to a local meat market in a white Ford F150 and were now shopping. Houston Police SWAT prepared to apprehend the suspects as they returned to the apartments.

11.   On March 8, 2022, at approximately 7:30pm, Houston Police SWAT members executed a vehicle stop on a white Ford F150 the suspect had been seen driving in earlier. This was in the parking lot of the apartment complex located at 550 Safford Run Road. Two adult male suspects, later identified as Jonathan Rolando ORTIZ-Mejia (dob 1/30/96, FBI # 596066RE7) who was the suspect seen first at the Franco Lee Health Center and Carlos Aron OYERVIDES (dob 12/23/1975, FBI# 312641FB2), were arrested without incident. Multiple cellular phones were located in the truck. At one point, the UC's called the number they had used when

communicating with the suspect and one of the phones began to ring, proving that it was the same phone that was used to contact the victim's family and HSI UC agents.

12. Houston Police next conducted a "knock and talk" at apartment #1105, and a female occupant identified as Evelin SERNA (dob 1/20/1992) answered the door. She gave the officers verbal consent to enter and search the apartment. Houston Police located Liam Zabdiel ROBLERO-Mejia inside the apartment. The child was checked for injury by paramedics and was transported to the Houston ERO Juvenile coordinator to arrange for his return to his family.

13. The suspects were transported to the HSI office in Spring, Texas to be processed for booking and interviewed.

14. Jonathan ORTIZ-Deleon was read his Miranda Rights via an ICE Service Form by SA Sabas Torres and this was witnessed by SA Matthew Brem. ORTIZ-Deleon signed the form indicating he understood his rights and was willing to make a statement without a lawyer present. ORTIZ-Deleon admitted that he was going to be paid $1,000 to assist in the smuggling of the child and that he, ORTIZ-Deleon, took possession of Liam Zabdiel ROBLERO-Mejia approximately one week prior. ORTIZ-Deleon further admitted that he called the child's father to request $6,500 to facilitate the delivery of the child. ORTIZ-Deleon also admitted negotiations were made with the child's "uncle" (Undercover Agent). ORTIZ-Deleon stated that the uncle (UC) was contacted shortly before his arrest, but Carlos OYERVIDES was the one using ORTIZ-Deleon's phone and speaking with the UC. ORTIZ-Deleon stated the call was made when both subjects were outside the Michoacana Meat Market. ORTIZ-Deleon stated he and OYERVIDES were planning on turning the child over to another suspect to facilitate the delivery of the child before they were arrested.

15.    Carlos OYERVIDES was read his Miranda Rights via an ICE Service Form by SA Sabas Torres and this was witnessed by SA Matthew Brem. OYERVIDES signed the form indicating he understood his rights and was willing to make a statement without a lawyer present. OYERVIDES admitted he was going to be paid $150-$200 to assist in the smuggling of Liam Zabdiel ROBLERO-Mejia.  OYERVIDES further admitted that he introduced ORTIZ-Deleon into the smuggling organization, and that they were both working for the same boss. OYERVIDES stated he used ORTIZ-Deleon's phone to contact the child's father and uncle (Undercover Agent).  OYERVIDES stated ORTIZ-Deleon indicated the child's family was going to have to pay $4,500 for the release of the child.  OYERVIDES stated he and ORTIZ-Deleon were planning on using another suspect to deliver the child.

## CONCLUSION

16. Based upon the evidence gathered from the investigation, I respectfully submit there is probable cause to believe that Jonathan Rolando ORTIZ-DeElon and Carlos Aron OYERVIDES commited the offense of "Conspiring with others knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transport, move or attempt to transport or move such alien within the United States by any means" in violation of Title 8 United States Code, Section(s) 1324 (a)(1)(A)(v)(I).

Respectfully submitted,

Jason C. Gadberry
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me telephonically this 11th day of April 2022 at _____ a.m. in Houston, Texas and I find probable cause.

Yvonne Ho
United States Magistrate Judge